1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

RUTH SMITH, et al.,

          Plaintiffs,

    v.

GARY BROWN, et al.,

          Defendants.

Case No. C10-1021 MJP

ORDER GRANTING PRELIMINARY
INJUNCTION

13
14
15
16
17
18

      This matter comes before the Court on Plaintiffs' motion for a preliminary injunction and temporary restraining order.  (Dkt. No. 3.)  The Court has reviewed the motion, the responses (Dkt. Nos. 52, 55, 57), the reply (Dkt. No. 58), all papers filed in support.  The Court held a hearing on the motion on July 30, 2010, at which time the Court GRANTED the motion for a preliminary injunction.  The Court writes this order for the benefit of the parties.

19

**Background**

20
21
22
23
24
25

      Plaintiffs, who range in age from 81 to 102, filed a complaint in this Court to avoid being evicted from an adult family home where they reside.  Jerome and Theresa Frigillana run the adult family home on land covered by restrictive covenants which prohibit any "business or commercial activity."  (Dkt. No. 10 at 35.)  A group of neighbors sued the Frigillanas in 2007, and obtained a declaratory judgment that the Frigillanas were in violation of the restrictive covenants.  (Dkt. No. 10-3 at 4.)  Plaintiffs were not parties to the case.  The Frigillanas appealed the decision, but dismissed the appeal as part of a settlement agreement

1   with the neighbors in which they agreed to cease operating the adult family home and sell

2   their property.  In 2009, Washington enacted RCW 64.38.060, which makes it void against

3   public policy to have restrictive covenants that "limit, directly or indirectly . . . [p]ersons and

4   legal entities from operating adult family homes . . ." subject to certain exceptions.  After the

5   law was enacted, the Frigillanas sought to void the settlement.  An arbitrator found the

6   agreement enforceable and ordered the Frigillanas to close the home and put up the property

7   for sale by June 24, 2010.  (Dkt. No. 10-3 at 32-22, 25.)

8        Plaintiffs filed the present suit to prevent the sale of the home and their eviction.  They

9   allege that enforcement of the settlement agreement and the restrictive covenants violates

10  their rights under the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 et seq.,

11  and Washington's Law Against Discrimination ("WLAD"), RCW 49.60.  Defendants include

12  Gary and Renee Brown, Anthony and Colleen Mantie, Rudy and Juanita Mantie, Darren and

13  Julie Davidson, Glenn and Tricia Mayer (collectively the "Neighbor Defendants"), and the

14  Highland Woods Homeowners Association.  (Dkt. No. 1.)  Plaintiffs amended their original

15  complaint to add the Frigillanas as defendants, but only nominally.  (Dkt. No. 27.)  Their

16  interests largely align with Plaintiffs' interests, given that they do not wish to sell their home.

17       Plaintiffs seek a preliminary injunction to prevent the enforcement of the settlement

18  agreement and any enforcement of the restrictive covenants against them.  (Dkt. No. 3.)  On

19  June 24, 2010, the Court held a hearing on Plaintiffs' motion for a temporary restraining

20  order.  (Dkt. No. 26.)  At the hearing, the Neighbor Defendants (who were the only

21  defendants named in the original complaint), assured the Court that they would not seek to

22  enforce the settlement agreement until the Court resolved the preliminary injunction issue.

23  The Court denied the TRO and scheduled the hearing on the motion for a preliminary

24  injunction.  On July 30, 2010, the Court heard oral argument on the motion for preliminary

25  injunction and issued the injunction after finding Plaintiffs had met their burden.  This order

    memorializes and elaborates on the Court's oral ruling.

ORDER GRANTING PRELIMINARY INJUNCTION - 2

**Analysis**

A.      <u>Standing</u>

The Neighbor Defendants argue that Plaintiffs' entire action is foreclosed because they are seeking to enjoin a settlement agreement to which they are not parties.  Defendants argue that Plaintiffs have no standing to interfere with a private settlement and therefore cannot force the owners of the nursing facility not to sell their home.  The argument lacks merit.

Article III standing requires Plaintiffs' to show (1) injury-in-fact (an actual or imminent harm that is concrete and particularized), (2) causation, and (3) redressability.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  Causation requires the injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." <u>Id.</u> (quotation omitted).  Redressability requires the injury to be likely redressed by favorable decision.  Notably, under the FHAA, a plaintiff may challenge the "sale" of a dwelling if that sale unlawfully discriminates against a disabled person.  42 U.S.C. § 3604(f)(1).

Plaintiffs have standing to challenge the sale of the Frigillanas' home which effectively terminates their residency in the home.  Plaintiffs' rights under the FHAA are implicated in the enforcement settlement agreement, which would effectuates what they argue is a discriminatory sale and eviction.  Plaintiffs have also shown that they would suffer mental and physical harm by being forced out of the Frigillanas' home forever.  (<u>See</u> Dkt. Nos. 4, 6 8.)  An injury-in-fact exists because the harms described are concrete and particularized.  The Court elaborates on this issue in its discussion below of irreparable injury in the context of the preliminary injunction.  The acts of which Plaintiffs complain are traceable to the Defendants who seek to enforce the settlement agreement and covenants to Plaintiffs' detriment.  An order from the Court finding the settlement agreement to be void would also redress Plaintiffs' grievance.  Plaintiffs have shown evidence sufficient to satisfy Article III standing.

1      Defendants argue that Plaintiffs lack standing to interfere with a private settlement

2 agreement to which they are not parties.  To accept this proposition, the Court would have to

3 find that private contracts or restrictive covenants are beyond the reach of the FHAA.  This

4 would essentially permit anyone to violate a person's rights under federal law simply by

5 entering into a contractual agreement to do so without making the injured person a party to

6 the contract.  The law does not support this conclusion.  For example, the Supreme Court long

7 ago held restrictive covenants were not outside the reach of the Fourteenth Amendment.

8 Shelley v. Kraemer, 334 U.S. 1 (1948).  And at least one court has found a master deed

9 provision to be invalid under the FHAA.  Gittleman v. Woodhaven Condominium Assoc.,

10 Inc., 972 F. Supp. 894 (D.N.J. 1997).  Defendants provide no authority to support the notion

11 that the FHAA cannot reach private agreements other than basic principles of contract law.

12 The Court rejects Defendants' erroneous standing argument.

13 B.      Preliminary Injunction

14      To obtain a preliminary injunction, Plaintiffs must demonstrate: (1) they are "likely to

15 succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of

16 preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "that an

17 injunction is in the public interest."  Winter v. Natural Resources Def. Council, Inc., 129 S.

18 Ct. 365, 374 (2008).  The Court in Winter rejected the Ninth Circuit's rule that the

19 "possibility" of irreparable harm was sufficient, in some cases, to obtain a preliminary

20 injunction.  Id. at 375-76.  The irreparable harm must be likely, not just possible.  Id.

21      1.      Success on the Merits

22      The FHAA "forbids discrimination in the sale or rental of housing, which includes

23 making unavailable or denying a dwelling to a buyer or renter 'because of a handicap of . . . a

24 person residing in or intending to reside in that dwelling after it is sold, rented, or made

25 available.'"  Budnick v. Town of Carefree, 518 F.3d 1109, 1113 (9th Cir. 2008) (quoting 42

U.S.C. § 3604(f)(1)(B)).  Here, the parties do not dispute that Plaintiffs are disabled as the

1   term is defined under the Act.  Substantively, Plaintiffs pursue four claims under the FHAA:

2   (1) disparate treatment, (2) disparate impact, (3) failure to make reasonable accommodation,

3   and (4) interference with their rights under the FHAA in violation of 42 U.S.C. § 3617.

4   Plaintiffs also pursue claims under the Washington Law Against Discrimination.  The Court

5   examines the likelihood of success as to all claims individually.

6                    a.     <u>Reasonable Accommodation</u>

7           To make out a claim of discrimination based on the failure to reasonably

8   accommodate, a plaintiff must demonstrate that (1) the plaintiff suffers from a handicap as

9   defined by the FHAA; (2) defendants knew or reasonably should have known of the

10  plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford

11  plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to

12  make such accommodation.  <u>Giebeler v. M & B Assocs.</u>, 343 F.3d 1143, 1147 (9th Cir. 2003)

13  (quotation omitted).  The plaintiff bears the burden of showing that the accommodation

14  "seems reasonable on its face."  <u>Id.</u> at 1156.  An accommodation is reasonable under the

15  FHAA "when it imposes no fundamental alteration in the nature of the program or undue

16  financial or administrative burdens."  <u>Id.</u> at 1157 (quotation omitted).  If the plaintiff shows

17  that the accommodation is necessary without a fundamental or unreasonable change in the

18  rule, then the defendant has the burden to show that the accommodation would cause under

19  hardship in the particular circumstances.  Here there is no dispute that Plaintiffs are disabled,

20  that Defendants know of their disabilities, and that Defendants have refused to accommodate

21  the disability.

22          Plaintiffs have demonstrated a likelihood they will succeed on the merits of their

23  reasonable accommodation claim.  The accommodation sought is necessary to afford

24  Plaintiffs the equal opportunity to live in the housing facility of their choice.  The

25  accommodation requires only minimal modification to the restrictive covenants.  The rules

against commercial activity go to the nature of the neighborhood—how it feels, the number of

1   cars entering in and out of the streets, and the activity levels at the homes.  Exempting

2   Plaintiffs from this rule to accommodate the adult family home will likely not alter the

3   residential character of the area.  This is especially the case where Plaintiffs have indicated

4   that several neighbors engage in commercial activity at their homes and that many of the

5   neighbors engage in noisy activities and park vehicles in front of their homes.  (See Dkt. Nos.

6   10 at 57, 10-2 at 31, 38.)  The Neighbor Defendants' lots themselves are between 2.5 and 10

7   acres.  (Dkt. No. 10-2 at 36.)  While the reasonable accommodation might also require the

8   Court to void the settlement agreement, the impact will be the same as forbidding Defendants

9   from enforcing the restrictive covenants. The Court notes that Defendants have made no

10   argument that the accommodation would be unreasonable.  Plaintiffs have demonstrated a

11   likelihood of success on the merits if this claim.

12          Relevant case law supports this outcome.  In Giebeler, the Ninth Circuit held that an

13   apartment manager should have made a reasonable accommodation to a potential tenant by

14   exempting him from a rule that required him to have a certain minimum income level and a

15   rule barring cosigning a lease to avoid the minimum income level.  Id., 343 F.3d at 1151.  The

16   court held that it was not proper to disqualify the plaintiff from the rental simply because

17   there were other prospective tenants similarly situated who could not meet the rental

18   company's credit standards.  The court explained that "the accommodation need not address

19   'barriers that would not be barriers but for the [individual's] disability.'"  Id. at 1150

20   (emphasis in original) (quoting U.S. Airways v. Barnett, 535 U.S. 391, 413 (2002) (Scalia, J.,

21   dissenting)).  The court noted, however, that the inability to pay was related to the plaintiff's

22   disability and his inability to work at his normal level.  Id. at 1151.  The court also held that

23   "accommodations need not be free of all possible cost to the landlord" or the party who is

24   being required to accommodate the plaintiff.  Id. at 1152.  Here, the potential impact to

25   Defendants is even less apparent.  While there may potentially be a diminution in the value of

1  their homes and the character of the neighborhood may be slightly altered, those burdens are

2  minimal and hypothetical—just as the potential for lost rents were in <u>Giebeler</u>.

3      The outcome here is also similar to <u>Turning Point, Inc. v. City of Caldwell</u>, 74 F.3d

4  941 (9th Cir. 1996), where the court held that the defendant city had unlawfully refused to

5  accommodate disabled residents at a nonprofit homeless shelter by refusing to waive annual

6  review of the special use permit that allowed the shelter to house more than the maximum

7  number of persons dictated by the area zoning policy.  Similarly, in <u>City of Edmonds v.</u>

8  <u>Washington State Bldg. Code Council</u>, 18 F.3d 802 (9th Cir. 1994), the court reversed and

9  remanded for the trial court to consider whether a residence for recovering alcoholics and

10  drug addicts might be entitled to a variance from a zoning ordinance that restricted the

11  number of unrelated persons who could live together.

12              b.      Intentional Discrimination

13      Plaintiffs argue Defendants' enforcement of the settlement agreement and restrictive

14  covenants is being undertaken selectively against them on account of their disabilities.

15      The Court employs the tradition <u>McDonnell Douglas</u> burden-shifting framework to

16  analyze this claim.  <u>Budnick v. Town of Carefree</u>, 518 F.3d 1109, 1114 (9th Cir. 2008).

17  Plaintiffs must first make out a prima facie case of intentional discrimination by showing

18  direct or circumstantial evidence that a discriminatory reason is more likely than not the

19  motivating reason for the Defendants' actions.  <u>Id.</u> at 1114-15.  If Plaintiffs meet this

20  requirement, the burden shifts to the Defendants to articulate a legitimate nondiscriminatory

21  reason for their actions, and then Plaintiffs must prove by a preponderance that Defendants'

22  purported reason is a pretext for discrimination.  <u>Id.</u>

23      Plaintiffs point to a variety of circumstantial evidence that Defendants' enforcement of

24  the restrictive is motivated out of a discriminatory animus.  They point out that several of the

25  Neighbor Defendants engage in commercial or business activity at their homes.  (Dkt. No. 10-

2 at 32.)  Plaintiffs also note that one neighbor lists his construction business's address as his

ORDER GRANTING PRELIMINARY INJUNCTION - 7

home's and leaves three trucks from his construction business parked in front of his house on occasion.  (Dkt. Nos. 10 at 57, 10-2 at 38.)  That certain neighbors violate the same restrictive covenant now being enforced against Plaintiffs is circumstantial evidence that the enforcement of the restrictive covenants is discriminatory.  Defendants have offered little explanation of a nondiscriminatory reason for the enforcement of the restrictive covenants against the Frigillanas and Plaintiffs.  They simply maintain that they have a right to enforce the covenants.  Even if the Court accepts this explanation as sufficient to shift the burden back to Plaintiffs, Plaintiffs' evidence could reasonably lead to the conclusion that the explanation is a pretext for discrimination.  The Court finds a likelihood that Plaintiffs will succeed on the merits of this claim.

            c.    Disparate Impact

        "To establish a prima facie case of disparate impact under the FHA, a plaintiff must show at least that the defendant's action had a discriminatory effect."  Budnick, 518 F.3d at 1118 (quotation omitted).  Plaintiffs "must establish (1) the occurrence of certain outwardly neutral . . . practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [type] produced by the [defendant's] facially neutral acts or practices."  Id. (quotation omitted).

        At least one court has held that enforcement of a restrictive covenant against a group home violated the protections of the FHAA under a disparate impact theory.  Martin v. Constance, 843 F. Supp. 1321 (E.D. Mo. 1994).  Plaintiffs set forth a plausible basis for their claim.  They argue that the covenants are only being enforced against them, even though several of the Neighbor Defendants also violate the covenants.  The purportedly neutral enforcement thus disparately impacts Plaintiffs and not the neighbors who purportedly violate the restrictive covenants.  Defendants provide little explanation in response.  The Court finds Plaintiffs likely to succeed on the merits of this claim when fully litigated.

1          d.       Interference with Fair Housing Rights under 42 U.S.C. § 3617

2          Plaintiffs argue that Defendants are attempting to interfere with their rights under the

3   FHAA in violation of 42 U.S.C. § 3617.  Defendants fail to oppose this argument.  Plaintiffs

4   argue that the Neighbor Defendants' filing of an action in superior court, entering into a

5   settlement agreement with the Frigillanas, and threatening to file a counterclaim.  This

6   unopposed argument sufficiently convinces the Court that there is a likelihood of success on

7   the merits of the claim.

8          e.       Washington Law Against Discrimination

9          The WLAD prohibits discrimination in the rental and conditions of housing based on

10   disability.  RCW 49.60.222(1)(b).  It states that any "written instrument relating to real

11   property which purports to forbid or restrict the . . . occupancy, or lease thereof to individuals

12   . . . with sensory, mental, or physical disability . . . is void."  RCW 49.60.224(1).  The law

13   also provides that it is an unfair practice to expel a person on the basis of a disability.  RCW

14   49.60.222(1)(i)  This includes failing to make reasonable accommodates to rules or policies

15   when necessary to accommodate someone with a disability.  RCW 49.60.222(b)(2).  Plaintiffs

16   borrow from employment discrimination case law and fashion four elements Plaintiffs must

17   prove: (1) Plaintiffs have a sensory, mental, or physical impairment that is medically

18   cognizable or diagnosable, (2) Plaintiffs qualify for the housing, (3) Defendants have notice of

19   the impairment and its accompanying substantial limitations, and (4) Defendants failed to

20   affirmatively adopt measures that were available and medically necessary to accommodate the

21   impairment.  (Dkt. No. 3 at 19 (citing Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145 (2004).)

22   For purposes of deciding this motion, the Court accepts this formulation.

23          Plaintiffs show a likelihood they will succeed on the elements of their WLAD claim.

24   Defendants do not dispute that they know Plaintiffs are disabled and qualified for the housing.

25   Defendants have also not taken measures to accommodate Plaintiffs.  That is evidenced by the

1    fact that they have taken several steps to force the closure of the Frigillanas' home and evict

2    Plaintiffs.  Plaintiffs have shown there is a likelihood of success on the merits of this claim.

3           Defendants argue that WLAD is inapplicable because it only permits plaintiffs to

4    challenge a "governing document" of a homeowner's association, not the individual members

5    of the homeowners association.  (Dkt. No. 52 at 17-18.)  This is a red herring.  Defendants

6    ignore the language in RCW 49.60.224 and RCW 49.60.222 that Plaintiffs rely on for their

7    substantive arguments.  Those laws appear to permit them to challenge the enforcement of the

8    covenants and Defendants' failure to reasonably accommodate them.

9           2.    Irreparable Harm

10          Plaintiffs argue their eviction will cause them to suffer irreparable harm because they

11   face likely physical and mental harm and that they will no longer be able to live at the home

12   of their choosing even if they succeed on the merits of their claim.  The Court agrees.

13          Plaintiffs provide declarations that support a finding that a forced move will cause

14   them to suffer physical and mental trauma.  For example, Plaintiff Ruth Smith was forced to

15   move out of the home in May 2009, which caused her a variety of problems she otherwise did

16   not suffer: she became disoriented, developed problems with her memory, and suffered a rash

17   on her body.  (Dkt. No. 4 at 3.)  Plaintiff Kathryn Richardson's niece states that when her aunt

18   was forced to move out of the Frigillanas' home in May, 2009, the move was "traumatic" and

19   Plaintiff Richardson became agitated and her behavior became volatile.  (Dkt. No. 8 at 3.)

20   Plaintiffs Herbert and Louise Ault's daughter states that change is "very traumatic and

21   disorienting" for her parents due to their dementia and that past transfers have worsened her

22   parents' conditions.  (Dkt. No. 6 at 3-4.) The Court finds that the Plaintiffs, who suffer from a

23   laundry list of ailments and who are all of advanced age, face a strong risk of irreparable harm

24   if they are forced to move from the home.

25          The Court also finds irreparable harm if the injunction does not issue because the

home itself will forever be lost for Plaintiffs' use and enjoyment.  If the Frigillanas are forced

1    to sell their property, the adult family home will not exist for Plaintiffs to move back into

2    should they ultimately succeed in their case.  The home itself is unique.  Plaintiff Ruth

3    Smith's daughter states that the Frigillanas' home is one of the few facilities with a registered

4    nurse on site, and that the staff provides unique care and "treat Ms. Smith as a person with

5    value." (Dkt. No. 4 at 3.)  Like a felled, ancient oak that cannot be replaced by a sapling, the

6    Frigillanas' home cannot be reopened as it currently operates if the Frigillanas no longer own

7    the property.  And while there may be other facilities available, there is no evidence they

8    match in every manner the Frigillanas' home.  Defendants have sought to force the Frigillanas

9    to sell their home and are almost certain to ensure the home is sold if the Court does not act.

10   For these reasons, the Court finds irreparable harm in the absence of injunctive relief.

11          Defendants argue that there is no medical evidence to support a finding of irreparable

12   harm.  There is no requirement that Plaintiffs must present medical testimony to show that the

13   loss of their home will cause them irreparable harm.  The Court rejects this argument.  The

14   Court finds there to be sufficient evidence of a strong likelihood of irreparable harm.

15          3.      Balance of Hardship

16          The balance of hardship weighs strongly in Plaintiffs' favor.  The harm they face from

17   eviction and relocation far outweighs the potential annoyance that the Neighbor Defendants

18   may endure by having an adult home in their neighborhood.  The Court notes that the lots in

19   the neighborhood range from 2.5 to 10 acres in size, making the potential harm to the sight

20   and feel of the neighborhood by the existence of the adult family home remote.  (Dkt. No. 10-

21   2 at 36.)  Defendants will be in the same position they have been for the past many years.

22          4.      Public Interest

23          This factor, too, weighs in Plaintiffs' favor.  Washington law favors the protection of

24   those with disabilities, as does the FHAA.  Plaintiffs point to legislative history in both the

25   state and federal laws that suggest an interest in prohibiting enforcement of restrictive

covenants that adversely impact the disabled.  Defendants offer no rebuttal argument on this

1   issue.  The Court finds that the issuance of a preliminary injunction would serve the public's

2   interest in preventing injustice to those with disabilities in relation to housing.

3                                        **Conclusion**

4        The Court finds that Plaintiffs are entitled to a preliminary injunction, barring the

5   enforcement of the restrictive covenants or the settlement agreement.  Plaintiffs have shown

6   that they face irreparable harm in the absence of an injunction, that the injunction serves the

7   public interest, and that the balance of hardship tips in their favor.  To varying degrees,

8   Plaintiffs have also shown that they are likely to succeed on the merits of their claims.  The

9   Court GRANTS the motion and issues a preliminary injunction.  Plaintiffs did not renew their

10   request for a temporary restraining order and the Court does not reverse its previous ruling on

11   the matter.

12        The Clerk is directed to send a copy of this order to all counsel of record.

13        DATED this 7th day of August, 2010.

Marsha J. Pechman
United States District Judge